IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BROOKES H. BAKER and CURTIS RYAN ROBERTS, | § § § | |
| Plaintiffs, | § § | |
| | § | Civil Action No. 4:19-cv-00869-O |
| v. | § § | |
| CITY OF FORT WORTH, | § § | |
| Defendant. | § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff Brookes Baker's Motion for Partial Judgment on the Pleadings (ECF No. 39), filed October 20, 2020, and Defendant City of Fort Worth's Response to Motion for Partial Judgment and Appendix in Support (ECF Nos. 40–41). Because Federal Rule of Civil Procedure 12(c) is limited to asserting defenses and objections to a pleading, the Court only addresses Plaintiff's alternative request for partial summary judgment. Having considered the briefing, pleadings, appendices, and applicable law, the Court **GRANTS** Plaintiff's Motion.

**I.   BACKGROUND**

This section-1983 action arises from Defendant City of Fort Worth ("the City") citing Plaintiff Brookes Baker ("Baker") for placing eighteen-inch crosses in the public right-of-way in front of an abortion clinic. *See* Citation, Pl.'s Ex. B, ECF No. 39-2. On March 24, 2018, an officer cited Baker under the City's ordinance governing posting of handbills, signs, posters, or advertisements in certain places. *See* Fort Worth, Texas, City Code § 23-14 (Def.'s App. 2, ECF No. 41); *see also* Affidavit of Sgt. Justin Seabourn with Fort Worth Police Department Incident Report No. 180026153, Def.'s App. 35–39, ECF No. 41. Chapter 23 Article 14 of the Fort Worth City Code mandates any person seeking to place any signs in a right-of-way of a public street or

1

upon any public property to first seek approval from the city council—excepting only government employees performing their duties and those placing political signs in accordance with another section of the City Code:

> § 23-14 POSTING OF HANDBILLS, SIGNS, POSTERS OR ADVERTISEMENTS IN CERTAIN PLACES—PROHIBITED.
> (a) It shall be unlawful for any person, firm or corporation, other than the owner of the property to post, fasten, erect or display, or cause to be posted, fastened, erected or displayed:
>> (1) Any type of handbill, sign, poster or advertisement on or upon any structure, tree, pole, curb or elsewhere within the right-of-way of any public street, or upon any public property within the City of Fort Worth, without the express permission of the city council of the City of Fort Worth;
>> (2) Any handbill, sign, poster or advertisement on or upon any private property, real, personal or mixed, within the City of Fort Worth if:
>>> a. Said property has a "No Soliciting," "No Handbills" or "No Trespassing" sign posted that is clearly visible from the street; or
>>> b. The property owner, during the time of placement, orally instructs that no such material be placed on the property.
>> (3) At any residence before 9:00 a.m. and after 7:00 p.m. Central Standard Time and after 8:00 p.m. during Daylight Savings Time, unless at the occupant's request.
> (b) This section shall not apply to a federal, state or local government employee or public utility employee in the performance of their duties for their employer or to a political sign on public property as allowed in Chapter 29, § A01.3.(c).

Fort Worth, Texas, City Code § 23-14 (Def.'s App. 2, ECF No. 41). Chapter 29, Article 1 Section 3(c) of the City Code defines a political sign on public property as those "referring to the candidates or issues involved in a public election" and are subject to the following additional regulations:

> a. Political signs shall be permitted on private property only with the consent of the property owner and provided the signs:
>> 1. Do not exceed eight feet in height;
>> 2. Do not have an effective area greater than 36 square feet;
>> 3. Do not contain any moving elements; and
>> 4. Are not illuminated.
> b. Political signs, including those with messages on both sides of the sign, shall be permitted on public property during the time the public property is used as an election polling location provided the signs:
>> 1. Are not located within 100 feet of an outside door through which a voter may enter the building of a polling location or such other distance as required by the Texas Election Code;

    2. Are on individual posts, stakes or holders placed into the ground or are attached to vehicles lawfully parked at the premises of a polling location;
    3. Do not have an effective area greater than four square feet;
    4. Are not more than two feet in height;
    5. Are posted only during the period beginning the first day the polls are open for voting and ending 24 hours after the polls close or the last voter has voted on election day;
    6. Are not placed within ten feet of driveways of a polling location;
    7. Are not illuminated;
    8. Do not block or obscure other signs; and
    9. Are not attached, placed or affixed to any building, tree, shrub, planting or landscaping areas, parking areas, driveways on medians with parking areas, pole, fence or other improvement on the public property used as a polling location.

Fort Worth, Texas, City Code § 29-1 (Def.'s App. 5, ECF No. 41).

On October 13, 2019, Plaintiffs Baker and Curtis Ryan Roberts ("Roberts") (collectively, "Plaintiffs") brought this action under 42 U.S.C. § 1983 against the City, city council members, and seven individual police officers, seeking actual and nominal damages, injunctive relief, and attorneys' fees; and alleging constitutional violations under the First Amendment rights to free speech and to free exercise of religion, under the Fourteenth Amendment Due Process Clause for unconstitutional vagueness, and under Article 1, Section 8 of the Texas Constitution right to free speech. Compl. ¶¶ 47–63, ECF No. 1. The only remaining Defendant is the City. *See* ECF Nos. 16, 25. On April 14, 2020, the City moved to dismiss all the claims against it under Rule 12(b)(6). ECF No. 29. In response, Plaintiffs filed their Supplement to Original Complaint, ECF No. 33, for which the Court finds good cause to addend to the Original Complaint. In light of the Supplement and the City's failure to reply, the Court denied the City's motion to dismiss on July 7, 2020. ECF No. 35. On October 20, 2020, Baker moved for judgment on the pleadings under Rule 12(c) and, alternatively, for partial summary judgment under Rule 56. ECF No. 39. The motion is now ripe for the Court's consideration.

## II. LEGAL STANDARD

### A. Motion for Summary Judgment

The Court may grant summary judgment where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis of its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *See Celotex*, 477 U.S. at 323. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

When reviewing the evidence on a motion for summary judgment, courts must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. If there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion. *Id.* at 250.

**III.     ANALYSIS**

Baker moves for partial summary judgment, challenging the constitutionality of the City's ordinances governing signs on public property—both facially and as-applied—in light of the First Amendment's Free Speech Clause and Free Exercise Clause. Mot. 5, ECF No. 39. Specifically, Baker contends that the City "distinguishes signs it allows for temporary placement based on content-based categories" so the Court must apply strict scrutiny in its review. Mot. 2–3, ECF No. 39 (citing *Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015)). The City rejects the argument, maintaining that both sign-governing ordinances are content neutral. Resp. 6, ECF No. 40. Though the Court declines to address the constitutionality of the temporary sign provisions of Chapter 29,[1] the Court finds two adequate and independent grounds to subject section 23-14 to strict scrutiny: (1) it regulates speech differently based on content and (2) it subjects speech to a prior restraint by the City. The Court addresses each in turn.[2]

---

[1] "Article III courts have jurisdiction over actual controversies; they are not permitted the luxury of issuing advisory opinions." *Wilson v. Zarhadnick*, 534 F.2d 55, 57 (5th Cir. 1976). The Court declines to review the challenge for lack of standing on the issue. *See* Mot. 2, ECF No. 39; *see* Fort Worth Code of Ordinances §29-1 (Ex. A). Baker's injury is limited to a fine under section 23-14 for failing to receive permission from city council, and the constitutionality of the Sign Code of chapter 29 is outside the scope of the live pleading and actual controversy. *See* Def's App. 35-39, ECF No. 41; *see also* the March 24, 2018, Citation, Pl.'s Ex. B, ECF No. 39-2; Supplement to Orig. Compl., ECF No. 33 ("The official policies to which the Plaintiffs refer [is the] Sign Ordinance, § 23-14 of Fort Worth's Code of Ordinances" and Fort Worth's noise ordinance). Indeed, the City rejects that chapter 29 even applies to Baker seeking to place a sign on public property, despite language in the ordinance suggesting otherwise. *See* Resp. 6, ECF No. 40 ("Chapter 29 specifically applies to private property and vehicles located within the City limits and within the City's extra-territorial jurisdiction, not City property or City right-of-way.").

However, the Court's declination to consider chapter 29 today is not a wholesale endorsement of its constitutionality. *Compare Reagan Nat'l Advert. of Austin, Inc. v. City of Austin*, 972 F.3d 696, 702 (5th Cir. 2020) (recognizing an off-premise-and-on-premise distinction for signs is content based and subject to strict scrutiny), *with* Fort Worth, Texas, City Code § 29-5 (Def.'s App. 30–34, ECF No. 41) (regulating off-premise and on-premise signs differently); *see, e.g.*, *id.* § 29-1, A02.6(a) (Def.'s App. 7, ECF No. 41) (recognizing that the ordinance regulates signs differently based on their content: "Provisions based upon location, size, appearance and *content* would normally fall under the zoning code[.]").

[2] Neither party disputes that Baker was participating in otherwise constitutionally protected speech.

### A. Content-Based Distinctions Draw Strict Scrutiny

First, the Court concludes that the City's sign ordinance embodied in section 23-14 creates a content-based distinction, subject to strict scrutiny. If a distinction is content based, then it is "presumptively unconstitutional" and subject to strict scrutiny. *Reed*, 576 U.S. at 163. If content neutral, it is subject to intermediate scrutiny. *Id.* The Fifth Circuit recently clarified how courts should determine whether a law is content based or content neutral:

> [A] law is content based when it "target[s] speech based on its communicative content," or in other words, when it "applies to particular speech because of the topic discussed or the idea or message expressed." To determine whether a law is content based, *Reed* states that a court must "consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." It may be the case that a distinction "defining regulated speech by its function or purpose" is drawn based on the message the speaker conveys and is thus facially content based and subject to strict scrutiny.

*Reagan Nat'l Advert. of Austin, Inc. v. City of Austin*, 972 F.3d 696, 702 (5th Cir. 2020) (quoting *Reed*, 576 U.S. at 163, 165–66) (collecting circuit court opinions recognizing the "sea change" that *Reed* created in First Amendment law) (internal citations omitted). There, the Fifth Circuit acknowledged that even "cursory inquiries into content" by a government official would render a regulation content based. *Id.* at 705 (citing *Thomas v. Bright*, 937 F.3d 721, 733 (6th Cir. 2019), *cert. denied,* No. 19-1201, 2020 WL 3865256 (U.S. July 9, 2020)) (adopting the Sixth Circuit's reasoning that where "the government official ha[s] to read the message written on the sign and determine its meaning, function, or purpose . . . the challenged regulation 'contains a non-severable regulation of speech based on the content of the message.'").

The City's section 23-14 distinguishes the need for city council permission for signs placed in a right-of-way or on public property in two ways—(1) signs placed by a governmental employee in the scope of their job, and those not; and (2) political signs at election polling places, and those

not. *See* Fort Worth, Texas, City Code § 23-14 (Def.'s App. 2, ECF No. 41). Only the second raises content-based concerns.[3] For the forthcoming reasons, the Court concludes that the political-or-not distinction drawn expressly in section 23-14 is a content-based regulation on the face of the ordinance and is, therefore, subject to strict scrutiny.

Section 23-14 targets all of what the government may deem as non-political signs for a heightened permitting requirement based *solely* on its communicative content. *Id.* ("This section shall not apply . . . to a political sign on public property as allowed in Chapter 29, § A01.3.(c)."). For a public right-of-way outside an election polling location, signs may be subject to a political versus non-political content review by a government official. *See id.* And depending on the content analysis, the City's official may remove the sign under the guise of lacking permission from the city council. *See id.* To determine whether the city council's permission requirement of Section 23-14 applies, the reader must ask "who is the speaker and what is the speaker saying? These are both hallmarks of a content-based inquiry." *See Reagan*, 972 F.3d 696 at 706.

In opposition, the City only contends that the exception to section 23-14 is limited, and so much so that it is a constitutional reasonable time, place, and manner restriction. *See* Resp. 10, ECF No. 39 ("This limited exception is a reasonable time, place and manner exception in that it allows signs to be posted at a limited place (on public property being used as a polling location), at a limited time (while the property is being used as a polling location), and as it applies to a limited activity (an election)"). But whether the limitation even applies first depends on the content of the sign itself, and content neutrality is a prerequisite to reasonable time, place, and manner

---

[3] To the extent Baker challenges the government's regulation of its own speech as a content-based distinction, such a distinction does not independently create a constitutional violation. *See Reed*, 576 U.S. at 175 (Alito, J., concurring) (citing *Pleasant Grove City v. Summum*, 555 U.S. 460, 467–469 (2009) ("In addition to regulating signs put up by private actors, government entities may also erect their own signs consistent with the principles that allow governmental speech.").

restrictions. *See Reagan*, 972 F.3d at 704–05 (quoting *Thomas*, 937 F.3d at 731) ("The City claims that this is not a regulation over a sign's content; rather, it is a time, place, or manner restriction based on the location of sign . . . But 'whether the Act limits on-premises signs to only certain messages or limits certain messages from on-premises locations, the limitation depends on the content of the message."); *see also Ward v. Rock Against Racism,* 491 U.S. 781, 798 (1989) (Time, place, and manner restrictions "must be narrowly tailored to serve the government's legitimate, *content-neutral* interests."). That the ordinance, in addition to the content distinction, draws a further distinction for political signs based on location (polling places) and time (election day) does not render it content neutral either. *See Reagan*, 972 F.3d at 706–07 ("The fact that a government official had to read a sign's message to determine the sign's purpose was enough to subject the law to strict scrutiny even though the sign's location was also involved"); *see also Thomas*, 937 F.3d at 730–31 ("the Supreme Court has repeatedly held that laws combining content-based and content-neutral factors are nonetheless content-based").

Similarly, the fact that only one preferred subject receives preferential treatment—political content—plagues the ordinance with the same constitutional infirmity. *See Carey v. Brown*, 447 U.S. 455, 460–61 (1980); *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 101 (1972) (internal citations omitted) ("Chicago may not vindicate its interest in preventing disruption by the wholesale exclusion of picketing on all but one preferred subject . . . . Such excesses 'can be controlled by narrowly drawn statutes, focusing on the abuses and dealing evenhandedly with picketing regardless of subject matter."); *see also Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 816 (1984) ("To create an exception for appellees' political speech and not these other types of speech might create a risk of engaging in constitutionally

forbidden content discrimination."). Thus, the political exception to section 24-13 is a political-content distinction, content-based and subject to strict scrutiny.

### B. Prior Restraints on Speech Draw Strict Scrutiny

Even without the political-content distinction, the City's city-council-permission scheme operates as a prior restraint on speech, bearing a heavy presumption of unconstitutionality. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990). A prior restraint is an "administrative [or] judicial order[ ] forbidding certain communications when issued in advance of the time that such communications are to occur." *Catholic Leadership Coalition of Tex. v. Reisman*, 764 F.3d 409, 437 (5th Cir. 2014) (citing *Alexander v. United States*, 509 U.S. 544, 550 (1993)). In a recent dissent, Judge Jones set forth the Supreme Court's prior restraint doctrine:

> Generally, speech licensing schemes must avoid two pitfalls. First the licensors must not exercise excessive discretion. *Catholic Leadership Coalition*, 764 F.3d at 437 (citing *Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988)). "[N]arrowly drawn, reasonable and definite standards" should guide the licensor in order to avoid "unbridled discretion" that might permit the official to "encourag[e] some views and discourag[e] others through the arbitrary application" of the regulation. *Forsyth Cty., Ga. v. Nationalist Movement*, 505 U.S. 123, 133 (1992).
>
> Second, content-based prior restraints must contain adequate procedural protections. The Supreme Court [] requires three procedural safeguards against suppression of protected speech by a censorship board: (1) any restraint before judicial review occurs can be imposed for only a specified brief period of time during which the status quo is maintained; (2) prompt judicial review of a decision must be available; and (3) the censor must bear the burdens of going to court and providing the basis to suppress the speech. *N.W. Enters. v. City of Houston*, 352 F.3d 162, 193–94 (5th Cir. 2003) (citing *Freedman v. Maryland*, 380 U.S. 51, 58–59 (1965))[, *abrogated on other grounds by N.W. Enters. v. City of Houston*, 372 F.3d 333 (5th Cir. 2004)]. In sum, a court reviewing a system of prior restraint should examine "both the law's procedural guarantees and the discretion given to law enforcement officials." *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1082 (9th Cir. 2006); *see also East Brooks Books, Inc. v. Shelby Cty.*, 588 F.3d 360, 369 (6th Cir. 2009); *Weinberg v. City of Chi.*, 310 F.3d 1029, 1045 (7th Cir. 2002).

*Def. Distributed v. United States Dep't of State*, 838 F.3d 451, 472–73 (5th Cir. 2016) (Jones, J., dissenting).[4]

Here, Section 23-14 subjects nearly all signs—not to a ban on speech—but requiring first to receive permission from the city council. Fort Worth, Texas, City Code § 23-14 (Def.'s App. 2, ECF No. 41) ("Any type of handbill, sign, poster or advertisement on or upon any structure, tree, pole, curb or elsewhere within the right-of-way of any public street, or upon any public property within the City of Fort Worth, without the express permission of the city council of the City of Fort Worth"). The City maintains that, in practice, certain administrative departments like the City's Transportation and Public Works Department or the City's Parks Department, may grant permission on behalf of city council. *See* Resp. 6, ECF No. 40. In this way, the City argues, "[s]uch a limited restriction allows the City's interest in preserving neighborhoods to be achieved without completely banning the ability of individuals or groups to engage in First Amendment activity." *Id.* at 7.

While allowing some groups to still engage in First Amendment activity, section 23-14 provides unfettered discretion to the city council to approve or deny signs on public property or to delegate that uncheck discretion to the City's departments while offering no procedural safeguards. A fair reading of section 23-14 may require the city council to be guided and bound by the Sign Code in chapter 29 as its limits to discretion and procedural safeguard, but the City expressly rejects that reading. *See* Resp. 6, ECF No. 40 ("The City's sign ordinance has a general prohibition

---

[4] Baker has standing to challenge the ordinance's licensing scheme as void on its face even though he did not seek a permit under it. *See Lovell v. City of Griffin*, 303 U.S. 444, 452–53 (1938) ("As the ordinance is void on its face, it was not necessary for appellant to seek a permit under it. She was entitled to contest its validity in answer to the charge against her."); *see also Shuttlesworth v. Birmingham*, 394 U.S. 147, 151 (1969) ("our decisions have made clear that a person faced with such an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license.").

on the placement of ALL signs in the City's right of way or on City property without the express permission of the City . . . Chapter 29 specifically applies to private property and vehicles located within the City limits and within the City's extra-territorial jurisdiction, not City property or City right-of-way."). Instead, earning the permission of the city council (or its agent) is *the* requirement for placing a sign anywhere on public property. Without "narrowly drawn, reasonable, and definite standards" and procedural guarantees, the city-council-permission scheme poses the threat of functioning as a censorship board—suppressing otherwise-protected signs it dislikes and allowing signs it likes. *Forsyth Cty*, 505 U.S. at 133 (1992); *see Def. Distributed*, 838 F.3d at 472–73 (Jones, J., dissenting). Thus, even overlooking the political exception to section 23-14, the city-council-permission scheme is a prior restraint on speech, subject to strict scrutiny.

### C. Application of Strict Scrutiny

To satisfy strict scrutiny, the City must "prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 576 U.S. at 171. "Strict scrutiny is, understandably, a hard standard to meet." *Reagan*, 972 F.3d at 709 (citing *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 444 (2015); *Reed*, 576 U.S. at 176 (Breyer, J., concurring)). The City maintains that the ordinance serves only one compelling governmental interest—"the elimination of trash and preserving aesthetics[.]" Resp. 7, ECF No. 40. The Supreme Court in *Reed* was willing to "[a]ssum[e] for the sake of argument that [aesthetic appeal and traffic safety] are compelling governmental interests[.]" *Reed*, 576 U.S. at 171 (2015); *see also Planet Aid v. City of St. Johns*, 782 F.3d 318, 330 (6th Cir. 2015) (following the lead of *Reed* and "[a]ssuming, without deciding, that the City's stated interests in preventing blight and aesthetics are compelling . . . .").

Though a sister court deduces from *Reed*'s *arguendo* assumption an invitation to find aesthetics to be a compelling state interest in particular circumstances, *see, e.g.*, *Fanning v. City of*

11

*Shavano Park*, 429 F. Supp. 3d 320, 333 (W.D. Tex. 2019), this Court declines to do so. The City here does not present facts along the lines of those that existed in *Shavano Park*. *See id.* at 333, n.10. Beyond the factual differences however, the Court relies on the wisdom of the Sixth Circuit's *Thomas* opinion on which much of the Fifth Circuit's reasoning in *Reagan* rests:

> But the Supreme Court has repeatedly found a State's interest in public aesthetics to be only "substantial" (rather than compelling), which is the interest level of intermediate scrutiny. *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507–08 (1981); *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 425–29 (1993). [The State] concedes that no court has ever found public aesthetics to be a *compelling* interest and presents no persuasive arguments for finding that it is, but nonetheless urges us to break new ground. We decline to do so.

937 F.3d at 733 (6th Cir. 2019); *see also Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1569–70 (11th Cir. 1993) (finding no compelling state interest in visual aesthetics that would justify content-based regulation of noncommercial speech). Like the Sixth Circuit, this Court declines to break new ground.

Even assuming the City could demonstrate that aesthetics is a compelling interest, the City fails to meet its burden of showing section 23-14 advances the aesthetic interest "in a direct and material way." *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995). The City argues that the combination of the city-council-permission scheme and the minimal and tailored exception for political signs "allows the City's interest in preserving neighborhoods to be achieved without completely banning the ability of individuals or groups to engage in First Amendment activity." Resp. 7, ECF No. 40; *see* Fort Worth, Texas, City Code § 23-14 (Def.'s App. 2, ECF No. 41). The Court disagrees. Offering limited and discretionary exemptions through the city council to allow some First Amendment activity by some individuals or groups renders the ordinance underinclusive.

12

Even setting aside the prior restraint concerns, the city-council-permission scheme is not narrowly tailored to achieve the City's purported compelling interest. To be narrowly tailored, the regulations cannot "provide only ineffective or remote support" of the asserted compelling interest. *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 188 (1999) (quotation omitted). An ordinance may be underinclusive "through the combined operation of a general speech restriction and [selected] exemptions." *City of Ladue v. Gilleo*, 512 U.S. 43, 51 (1994). Such a law is problematic "because its exemptions discriminate on the basis of the signs' messages." *Id*. By picking and choosing which subjects or speakers have permission to place a sign, the City may "attempt to give one side of a debatable public question an advantage in expressing its views to the people." *First Nat. Bank v. Bellotti*, 435 U.S. 765, 785 (1978); *see also United States v. Stevens*, 559 U.S. 460, 470 (2010) ("The First Amendment's guarantee of free speech does not extend only to categories of speech that survive [the City's] *ad hoc* balancing of relative social costs and benefits."). "The underinclusiveness of a law can be cured by either eliminating the exemptions such that all speech is treated equally or expanding the exemptions to include more protected speech." *See Metromedia*, 453 U.S. at 513–15 (plurality); *see also Rappa v. New Castle Cnty.*, 18 F.3d 1043, 1063 (3d Cir. 1994) ("The rule against content discrimination forces the government to limit all speech—including speech the government does not want to limit—if it is going to restrict any speech at all."). The City has not put forth any argument that signs the city council may grant permission to place on public property are any less of an eyesore than signs to which it would refuse permission. *See Reagan*, 972 F.3d at 709–10 (5th Cir. 2020). *Reed* cautions against placing "strict limits on" some signs with the goal of "beautify[ing] the City while at the same time allowing [other signs of the same type.]" 576 U.S. at 172. Section 23-14 is, at best, like the ordinance in *Reed*, underinclusive to serve the purported compelling interest; at

13

worst, it is a viewpoint-based means for allowing some speech and disallowing others under the guise of achieving the aesthetic interest. Because the City has failed to show that the ordinance is narrowly tailored to serve a compelling government interest, it fails strict scrutiny.

The political-content distinction drawn by the City in section 23-14 may be entirely reasonable, but as the *Reed* majority warned, "laws that might seem 'entirely reasonable' will sometimes be 'struck down because of their content-based nature.'" 576 U.S. at 165 (quoting *Gilleo*, 512 U.S. at 60 (1994) (O'Connor, J., concurring)). As Justice Thomas explained, the First Amendment requires such a reach because "[i]nnocent motives do not eliminate the danger of censorship presented by a facially content-based statute, as future government officials may one day wield such statutes to suppress disfavored speech. That is why the First Amendment expressly targets the operation of the laws—*i.e.*, the 'abridg[ement] of speech'—rather than merely the motives of those who enacted them." *Id.* at 167 (alteration in original) (quoting U.S. Const. amend. I). In short, the First Amendment disallows speech funnels for fear they become speech filters.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the political-content distinction is content based and that the city-council-permission scheme creates a prior restraint on speech. The ordinance fails under strict scrutiny and, thus, violates the First Amendment.[5] Accordingly, the Court **GRANTS** Baker's alternative Motion for Partial Summary Judgment (ECF No. 39). *See* Fed. R. Civ. P. 56.

**SO ORDERED** on this **8th day** of **December, 2020**.

Reed O'Connor
UNITED STATES DISTRICT JUDGE

---

[5] Because the ordinance is facially unconstitutional, the Court need not reach the as-applied grounds, the "unconstitutionally broad" grounds, nor the Free Exercise grounds. *See* Mot. 1–2, 4, ECF No. 39.